The husband appeals from the second amended judgment of divorce nisi, specifically challenging the division of marital assets. He makes two arguments on appeal: first, he argues that the judge abused her discretion when she declined to offset a $304,554 payment given to the wife from the sale of the marital home; and second, he contends that the judge abused her discretion by treating as advances on the marital estate $439,000 of litigation and other expenditures related to the husband's children from his first marriage. We affirm.
The facts are essentially undisputed, and we summarize only those pertinent to the issues on appeal.[2] The parties had a ten-year marriage that produced a set of twins in June of 2007. The husband in addition had two children from an earlier marriage. Each spouse brought significant, but unequal, assets into the marriage: the husband brought assets valued at $2.9 million, while the wife brought $900,000. "In recognition of the unequal financial contributions of the parties on the date of the marriage," the judge gave each party an offset equal to the amount he/she brought into the marriage. "From there, the balance of $3.27 million [of marital assets] shall be divided approximately in half, in special consideration of the parties' relatively equal contributions to the marriage and Husband's superior opportunity to acquire future capital assets and income" (emphasis added).
The husband filed a motion to alter or amend the judgment, raising nine specific contentions of error in the judgment. That motion was allowed in part and denied in part, with the judge giving specific additional explanation as to her reasoning with respect to each item. Although the judge adjusted certain portions of the original judgment, she concluded overall that the "changes do not materially affect the findings of fact and do not disturb the overall scheme of distribution of the parties' assets nor its rationale."[3]
The husband's arguments can be viewed as stemming from the fact that although the judge stated that she intended an "approximately" equal division of the property accumulated during the marriage, the ultimate division of those assets was not fifty-fifty. But the goal of G. L. c. 208, § 34, is "an equitable, rather than an equal, division of property." Williams v. Massa, 431 Mass. 619, 626 (2000). As long as the judge considers all the relevant § 34 factors together, giving each the weight the judge deems appropriate, "a judge's determination on the equitable division of marital property will not be disturbed." Id. at 631. Contrast Sampson v. Sampson, 62 Mass. App. Ct. 366, 371 (2004) (property division vacated where judge's purported equal division was inequitable). With these general principles in mind, we now turn to the husband's two specific claims of error.
The husband first argues that the judge abused her discretion by declining to offset the $304,553.99 payment given to the wife from the sale of the marital home. In dividing the marital property, the judge assigned the marital home to the husband at its fair market value, $1,417,500, rather than the purchase price, $1,280,000. The judge then declined to offset the $304,553.99 sale proceeds paid to the wife. The husband argues that this decision resulted in "double dipping" or a double benefit to the wife because the house was counted against him at a price higher than he paid for it and the sale proceeds were not counted against her. We have previously stated that "double dipping" may arise from "the seeming injustice that occurs when property is awarded to one spouse in an equitable distribution of marital assets and is then also considered as a source of income for purposes of imposing support obligations." Champion v. Champion, 54 Mass. App. Ct. 215, 219 (2002). In that sense, double dipping did not occur here; the judge did not consider the marital home as a source of income for purposes of imposing support obligations.[4]
Moreover, we see no inequity in the judge's handling of the proceeds of the sale of the marital home, which was grounded on permissible considerations and solidly on the facts. The judge rested her decision on the husband's use of marital funds to purchase the home, "[h]is conduct in trying to force a rapid sale at a reduced price, and then buying the marital home for himself" below market value, and the benefit of owning the home, which meant he did not have to move.[5] She balanced these financial advantages to the husband against the disadvantages to the wife who, after the home was sold, "had little time to find a suitable residence" and whose "search was difficult because the children were still in school and she did not have adequate liquid funds to make a down-payment on a house." In addition, the husband's refusal to comply with a court order requiring him to give the wife her portion of the proceeds from the marital home exacerbated the wife's disadvantage. Given the inequities caused by the husband's conduct, we cannot say it was abuse of discretion for the judge to decline to offset the payment as part of her overall assessment of all the § 34 factors.
The husband also argues that the judge abused her discretion by treating $439,000 of expenditures related to the children of his first marriage as advances on his share of the marital estate. In fact, the judge did not treat all of those expenditures as advances. The judge treated $130,000 spent on the children as an advance because the funds "were in excess of [the husband's] child support obligations and were not spent in furtherance of the marriage." By contrast, the amounts spent on child support ($380,000) and for his daughter's college tuition ($140,000) were not treated as advances.
The judge did, however, treat $309,000 expended in litigation against the husband's first wife as an advance. The judge found those expenses to be unreasonable. The husband's first marriage ended in a contentious divorce.[6] She also found that the wife did not have full knowledge of those expenses, nor did she consent to them. Ultimately, the judge found that the expenses were not made in furtherance of the marital enterprise. Conduct that has an adverse impact on the marital estate may be "considered as a factor that would diminish that spouse's equitable share of the marital property." Kittredge v. Kittredge, 441 Mass. 28, 38 (2004). When the husband spent beyond what the judge determined was reasonable, he eliminated resources that would have otherwise been part of the marital property and subject to division. The judge was, therefore, within her discretion to consider the loss to the marital estate from the husband's unreasonable spending in her analysis of the § 34 factors. See id. at 43 (judge permitted to consider husband's losses from gambling as factor in dividing marital estate); Salten v. Ackerman, 64 Mass. App. Ct. 868, 873-874 (2005) (judge permitted to consider husband's losses from bad investments as factor in dividing marital estate).[7]
Second amended judgment affirmed.

Because the husband only challenges the division of marital assets, we limit our summary of the judge's extensive findings to those that relate to that aspect of the judgment.

The parties also filed a joint motion to amend the judgment to allow the wife to resume using her former name and to issue "a wage assessment for payment of child support." The judge allowed the joint motion.

Indeed, neither party received spousal support. The record demonstrates that the judge limited her consideration of child support to entirely appropriate factors. See Massachusetts Child Support Guidelines § II (2013) (defining factors to be considered in setting child support order).

After the wife filed for divorce, the parties decided to sell the marital home. The husband pushed for the home to be sold immediately, representing to the court that the parties could not afford to keep the home. At the husband's request, a special master was appointed to oversee the sale of the marital home and the court ordered that "each party shall be obligated to accept an offer that is within 3.5 [percent] of the listing price." Initially, the marital home was listed at $1.425 million, with agreed monthly reductions in price for every month the property did not sell. Ultimately, the price dropped to $1.325 million and the husband offered to purchase the home for $1.28 million, exactly three and one-half percent below the asking price. The special master accepted the husband's offer. The wife moved out of the home after the husband's offer was accepted and the husband continued to live in the home. The wife received $304,553.99 from the sale.

In fact, litigation regarding the husband's two children from the first marriage continued during the parties' marriage.

We deny the wife's request, pursuant to G. L. c. 208, § 38, for legal fees associated with this appeal.